Original,
No. 5090.

DOLORIS BRIDGES

*v.*

PERKINS BASS

and

ROBERT L. STARK, *Secretary of State.*

Hearing October 5, 8, 9, 10, 1962.

Submitted October 10, 1962.

Order issued October 10, 1962.

Opinion filed October 19, 1962.

296

*Gardner C. Turner* and *Maurice P. Bois* (both orally), for the plaintiff.

*William L. Phinney, William S. Green* and *Kimon Zachos* (*Mr. Phinney* orally), for the defendant Bass.

*William Maynard,* Attorney General and *Elmer T. Bourque,* Deputy Attorney General, for the defendant Secretary of State.

PER CURIAM. One of the plaintiff's main contentions was that the defendant had exceeded the statutory limit by failing to report an expenditure of $857.45 made by the New Hampshire Committee for Informed Electorate. The evidence disclosed that this committee was composed of two persons only, Susan N.

McLane, chairman and Stephen W. Winship, secretary. The committee sponsored an advertisement which appeared in several newspapers on the day before the primary. It contained a list of persons prominent nationally and state-wide who had been attacked by William Loeb, publisher of the Manchester Union Leader, which has state-wide circulation. It stated that "William Loeb's Manchester Union Leader is running [Doloris Bridges as] a candidate for the United States Senate." The advertisement listed the critical and derogatory phrases used by the editor over a long period of time with respect to other persons and warned that "a vote for Bridges is a vote for Loeb." The advertisement had been prepared by Susan N. McLane over a period of several months and was originally tendered as an advertisement in behalf of the candidate Bass. It was refused by Bass' campaign manager and by his advertising agent. Thereafter the advertisement was altered in some particulars for signature by the newly organized committee and paid for by it.

The evidence disclosed that the advertisement was financed in the first instance by Susan N. McLane as chairman of the committee, who was also a Bass supporter. Before and after it appeared she solicited contributions for the cost ($857.45) from various voters throughout the state. These contributions were made by supporters of other candidates in the senatorial Republican primary, by Democrats and by supporters of Bass. The evidence also disclosed that the original cost of mats and of printing this advertisement in two newspapers was advanced as a favor to Susan N. McLane by one St. Aubin who was later reimbursed by her. His firm was in charge of Bass' publicity and had previously refused the advertisement on behalf of Bass.

It has been suggested that the advertisement was no more detrimental to candidate Bridges than to the candidates who had not received the· support of the Manchester Union Leader. It would take more political naivete than any member of this bipartisan court can muster to rule that this advertisement was not detrimental to the candidate Bridges and· indirectly beneficial to the candidate Bass. However, it is clear on the evidence that many of the people who contributed to the cost of this advertisement did so as a protest against the editorial policies and what they considered to be the excesses of the newspaper (Manchester Union Leader) which was supporting the candidate Bridges. This advertisement was prepared and caused to be

published by a committee which assumed responsibility for it. RSA 70:8 (supp). The action of the committee was not prohibited. We conclude upon all the evidence that the advertisement was not published with the consent, express or implied, of the candidate Bass, that the expense of the committee was not an expenditure of the Bass campaign (RSA 70:6 and 14 (supp)) and was not a contribution made in behalf of Bass with his knowledge and consent. RSA 70:2 (supp).

It was also contended that the defendant exceeded the statutory limit of expenditures by failing to report the salary of his congressional employees. This was an item which was not required to be reported under RSA 70:4 I (supp); Laws 1957, 303:2; *Catalfo v. Cotton*, 104 N. H. 290.

Other evidence was introduced of expenses alleged to have been made on behalf of the Bass campaign which were not accounted for in his reports. The evidence did not establish that any such expenses, whatever their amount, which were incurred with the knowledge and consent of the candidate Bass or his fiscal agent increased his expenditures beyond the statutory limit. RSA 70:4 I (supp).

It was alleged in the petition that the report filed with the Secretary of State by the candidate Bass was not signed by his fiscal agent. It appears that this was true as to a copy furnished the plaintiff's attorney but the original report as filed with and certified by the Secretary of State did contain the signature of the fiscal agent and no violation of the act is perceived. RSA 70:12 (supp).

It is clear that if the statute is to regulate political receipts and expenditures with the view to complete reporting and public disclosure it must lay down more precise requirements than are presently prescribed. This is a legislative problem which has not been solved with complete success here or elsewhere. Heard, The Costs of Democracy, c. 16 (1960); Note, Statutory Regulation of Political Campaign Funds, 66 Harv. L. Rev. 1259 (1953); Robinson, Revision of Federal Law on Campaign Finances, 30 Geo. Wash. L. Rev. 328 (1961); *Catalfo v. Cotton, supra*.

*Petition dismissed.*

All concurred.